**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

| | |
|---|---|
| STATE OF WEST VIRGINIA *ex rel.*, John B. McCuskey, Attorney General, <br><br> Plaintiff, <br><br> - against - <br><br> Apple Inc., <br><br> Defendant. | Case No. __3:26-cv-00240__ <br><br> Removed from: <br><br> Circuit Court of Mason County, West Virginia <br><br> CC-26-2026-C-16 |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Apple Inc. ("Apple"), by its undersigned counsel, hereby timely removes the captioned action to this Court from the Circuit Court of Mason County, West Virginia.[1]  In support of this Notice of Removal, Apple states as follows:

1.      Apple is a technology company that designs, manufactures, and markets smartphones, personal computers, tablets, wearables and accessories, and offers a variety of related services, including cloud services ("iCloud").  Apple's services are used throughout the United States.

2.      Apple is entitled to remove this action under 28 U.S.C. § 1442(a)(1).  Apple's right in this regard is "absolute."  *See Willingham v. Morgan*, 395 U.S. 402, 406 (1969).

3.      Venue in this Court is proper because this Court occupies the district and division in which this action was pending.  *See* 28 U.S.C. §§ 129(b), 1442(a).

---

[1] By filing a Notice of Removal in this matter, Apple does not waive and expressly reserves all rights, claims, and defenses.  Apple also reserves the right to amend or supplement this Notice of Removal.

4.      The captioned action was commenced by Plaintiff State of West Virginia ("State") on February 19, 2026, by the filing of the complaint (the "Complaint") in the Circuit Court of Mason County, West Virginia.  The Complaint was given Case No. CC- 26-2026-C-16. True and accurate copies of the Complaint and Summons are attached hereto as Exhibit 1.

5.      Apple meets all of the requirements for removal under § 1442(a)(1).  Apple acts under federal officers, in accordance with federal law, and pursuant to federal immunity in reporting known instances of child sexual abuse material ("CSAM") for federal law enforcement. The Complaint targets Apple's role in this carefully crafted federal framework, and Apple enjoys multiple colorable federal law defenses to the State's claims.

## BACKGROUND

6.      Pursuant to 18 U.S.C. § 2258A, Apple must affirmatively report any known apparent violations of the federal CSAM laws to the National Center for Missing and Exploited Children ("NCMEC") through NCMEC's CyberTipline.[2]  Although organized as a private nonprofit, NCMEC was established by Congress and operates as the official national resource center and information clearinghouse for missing and exploited children.  *See* 4 U.S.C. § 11293(b)(1)(B).

7.      NCMEC reviews reports provided to its CyberTipline and makes these reports, as well as any accompanying analysis, "available to the appropriate law enforcement agency for its review and potential investigation." 34 U.S.C. § 11293(b)(1)(K)(i)(II).  *See also* Adrienne L. Fernandes-Alcantara & Emily J. Hanson, Cong. Rsch. Serv., RL34050, The Missing and

---

[2] Apple is a "Provider" under the statute, defined as an "electronic communication service provider or remote computing service."  *See* 18 U.S.C. § 2258E(6).

Exploited Children's (MEC) Program: Background and Policies 11 (2021).  The United States Department of Justice (the "DOJ") and other law enforcement partners across the country rely on CSAM reports provided to NCMEC to detect and prosecute cases of CSAM possession and distribution—and to "to reduce the existence and distribution of online images and videos of sexually exploited children." 34 U.S.C. § 11293(b)(1)(K).  As a result, the statute carries significant and escalating penalties for Providers who fail to report known CSAM to NCMEC. 18 U.S.C. § 2258A(e).

8.      Section 2258A is part of the Providing Resources, Officers, and Technology to Eradicate Cyber Threats to Our Children Act of 2008 (the "PROTECT Act").  Congress enacted the PROTECT Act to "increase the ability of law enforcement agencies to investigate and prosecute child predators."  Providing Resources, Officers, and Technology to Eradicate Cyber Threats to Our Children Act of 2008, Pub. L. No. 110-401, 122 Stat. 4229 (codified in relevant part at 18 U.S.C. § 2258A (2018)).

9.      Congress enacted Section 2258A to impose a duty on Providers like Apple to report known CSAM in furtherance of Congress's overarching law-enforcement goal, 28 U.S.C. § 2258A(a) ("Duty to Report"), while disclaiming the imposition of any affirmative duty on Providers to monitor, search, screen or scan for reportable content or data, in order to protect the privacy interest of their users, *id.* § 2258A(f) ("Protection of Privacy").  Congress specifically provided that nothing in Section 2258A should be construed to require a Provider to monitor any user or any user's communications, nor to "affirmatively search, screen, or scan for facts or circumstances" suggesting the possession or distribution of CSAM.  *Id.*

3

10.     By requiring reports only when Providers obtain actual knowledge of CSAM—rather than imposing an affirmative requirement to search users' data for CSAM—Section 2258A seeks to safeguard evidence provided to law enforcement from Fourth Amendment challenge.  Because the evidence in CSAM distribution and possession cases often may originate from these Providers, protecting this evidence from future legal challenge is a necessary and critical part of this federal framework.

11.     The State recognizes the importance of this federal framework in its Complaint. *See* Compl. ¶¶ 188–89 ("Similar to other states, law enforcement personnel in West Virginia often begin investigating a case involving CSAM with a tip from NCMEC, which relays facts gathered by technology companies.  These tips have, in fact, led to the discovery, prosecution, and conviction of individuals in West Virginia who possessed CSAM."); *see also id.* ¶ 190 (providing an example of a guilty plea for CSAM possession that resulted from a tip to law NCMEC).

12.     The importance of Providers to the NCMEC reporting scheme—and, more broadly, to DOJ's overall enforcement of federal criminal laws targeting CSAM possession and distribution—is made clear by Congress's decision to immunize Providers like Apple from the liability that they otherwise would face for preserving and transmitting images of child pornography.  *See* 18 U.S.C. § 2258B(a).  In carving out this express statutory immunity, Congress recognized the unique role that Providers, like Apple, play in this federal scheme.

**THE STATE'S ALLEGATIONS**

13.     The State's Complaint is premised on alleged flaws in Apple's CSAM monitoring and detection practices that the State alleges "enable[] distribution of CSAM" and result in too

few reports to NCMEC and federal law enforcement. Specifically, the State alleges that Apple is liable for design defects, negligence for failing to implement adequate CSAM screening, removal, and reporting technologies, creating or contributing to a public nuisance by facilitating the dissemination of CSAM content, and violations of the West Virginia Consumer Credit and Protection Act. Compl. ¶¶ 5–13.

14.    According to the Complaint, the alleged design defect and breach of duty supporting the State's negligence claim is Apple's purported failure to implement proactive systems to screen, monitor, and report user content for CSAM. Compl. ¶¶ 210, 220–23. The alleged public nuisance results from Apple's alleged failure to implement "comprehensive CSAM detection tools across its ecosystem, including but not limited to, the deployment of such tools to scan for CSAM in user uploads to iCloud and the inclusion of integrated, easily accessible mechanisms for reporting CSAM in its products." Compl. ¶ 236. Likewise, the State's claim under the West Virginia Consumer Credit & Protection Act points to Apple's alleged "failure to disclose" that its products "lack industry-standard tools," including certain scanning technologies, "to detect and report CSAM." Compl. ¶ 240.

15.    In pleading these claims, the Complaint repeatedly points to Apple's role as a Provider in reporting CSAM to NCMEC and DOJ under Section 2258A. Among other things, the State argues that Apple:

      a.    made fewer reports than its peers to NCMEC, *see id.* ¶ 2;

      b.    designed its products to "lack integrated, accessible mechanisms for reporting CSAM," *id.* ¶ 204;

      c.    failed to implement tools to *proactively* detect CSAM on its platforms, *see, e.g.*, *id.* ¶¶ 210(f), 236;

> d.    failed to implement tools that would trigger automatic CSAM reports, *id.* ¶ 223; and
>
> e.    failed to disclose that its products lacked "industry-standard tools" to detect and report CSAM, *id.* ¶ 240.

16.    The relief the State seeks—including injunctive relief requiring Apple to "implement[] . . . comprehensive CSAM detection tools across its ecosystem"—would seriously disrupt this federal scheme. The absence of such a requirement is a critical part of Congress' statutory framework. A state-imposed requirement compelling Apple to affirmatively search, screen or scan for third-party CSAM content would necessarily be coupled with mandatory reporting under federal law. As a result, the State's relief would result in state-compelled searches, meaning that any evidence derived from such searches in a criminal prosecution could be challenged under the Fourth Amendment. That is the very result that courts have repeatedly recognized that Section 2258A avoids.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE 28 U.S.C. § 1442(a)(1)

17.    A party seeking removal must file a notice that includes only "a short and plain statement of the grounds for removal, meaning there must be a plausible allegation that federal jurisdiction is proper." *Maryland v. 3M Co.*, 130 F.4th 380, 387 (4th Cir. 2025) (internal citation omitted).

18.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) "promises a federal forum for any action against an officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office." *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 234–35 (2021).

19.     The "congressional promise" inherent in the federal officer removal statute is "broad and mandates a liberal construction." *W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 194 (4th Cir. 2025).  "[R]ather than narrow, grudging interpretations of the statute, the statute must be liberally construed."  *3M*, 130 F.4th at 388 (change accepted and internal citation omitted).  Accordingly, the "normal rule of pleading is not effective when § 1442(a)(1) applies."  *CaremarkPCS Health*, 140 F.4th at 195.

20.     Under Section 1442(a)(1), a defendant is entitled to removal "if its notice of removal plausibly alleges (1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for or in relation to the asserted official authority."  *CaremarkPCS Health*, 140 F.4th at 197.  All three requirements are satisfied here.

## I.     Apple Acted Under a Federal Officer

21.     As the Fourth Circuit recently explained, "[t]o 'act under' a federal officer, a private company must be engaging in an effort to assist, or to help carry out, the duties or tasks of the federal superior."  *Id. See also Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007) ("[P]recedent and statutory purpose make clear that [a] private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."). Thus, a private actor "assists" the government when it "provides services, in the absence of which, the government would need to produce itself." *Cobb v. GC Servs., LP*, No. 3:16-cv-3764, 2016 WL 7155765, at *2 (S.D. W. Va. Dec. 7, 2016) (citing *Watson*, 551 U.S. at 153–54)).  This requirement, "like the rest of the statute, benefit[s] from a broad interpretation." *CaremarkPCS Health*, 140 F.4th at 197.

7

22.     Apple satisfies this requirement here.  In reporting known CSAM pursuant to Section 2258A and fulfilling its important role under federal law, Apple acted "under" both NCMEC and DOJ—and "assisted" both by acting under federal authority (and pursuant to federal statutory immunity) to provide the government information that it might not be able to obtain on its own.

23.     As an initial matter, both DOJ and NCMEC are federal officers, such that "acting under" either provides ground for removal under 28 U.S.C. § 1442(a)(1).  There can be no question DOJ is a federal officer, and the two courts of appeals that have addressed the question of NCMEC's status directly have determined that NCMEC is also a governmental entity.  *See United States v. Guard*, 152 F.4th 375, 387–89 (2d Cir. 2025) ("NCMEC constitutes a governmental entity."); *United States v. Ackerman*, 831 F.3d 1292, 1299–1300 (10th Cir. 2016) (Gorsuch, J.) ("NCMEC qualifies as a governmental entity.").

24.     Further, Congress has enlisted Providers like Apple to assist the federal government in performing its law enforcement function.  Congress enacted the PROTECT Act in 2008 to "increase the ability of law enforcement agencies to investigate and prosecute child predators."  Providing Resources, Officers, and Technology to Eradicate Cyber Threats to Our Children Act of 2008, Pub. L. No. 110-401, 122 Stat. 4229 (codified in relevant part at 18 U.S.C. § 2258A (2018)).

25.     To further this law enforcement goal, Congress tasked Providers with reporting CSAM to NCMEC and, in turn, to DOJ.  18 U.S.C. §§ 2258A(a), (f). Congress also granted Providers broad immunity for preserving and transmitting images of child pornography—

immunity that only the Government ordinarily enjoys—in order to facilitate this assistance. *See* 18 U.S.C. § 2258B(a).

26.    Because information reported to NCMEC (pursuant to federal immunity) is shared with appropriate law enforcement agencies for "review and potential investigation," 34 U.S.C. § 11293(b)(1)(K)(i)(II), when Apple reports CSAM to NCMEC, it does so "in an effort to assist, or to help carry out, the duties or tasks of the federal superior," *see CaremarkPCS Health*, 140 F.4th at 197, and pursuant to authority delegated and immunity provided to it by the federal government, *c.f. Watson*, 551 U.S. at 156.  In reporting to NCMEC, Apple thus provides the government services that it would otherwise need to obtain itself.  *Cobb*, 2016 WL 7155765, at *2.

## II.    Apple Has a Colorable Federal Defense

27.    "A colorable federal defense is one that is defensive and based in federal law, and that arises out of a defendant's official duties." *CaremarkPCS Health*, 140 F.4th at 198.  Of note, "[a] removing defendant faces a low bar to show that his federal defense is colorable." *Id.*  The defense "need not be clearly sustainable," but "must only be plausible." *Id.*

28.    Apple has federal defenses rooted in, among others, Section 2258A and in the Fourth Amendment, as well as in 47 U.S.C. § 230 ("Section 230").

## A.    The State's Claims are Preempted by Section 2258A and Precluded by the Fourth Amendment

29.    Without prejudice to other defenses it may bring, Apple has a colorable federal defense against the State's claims on the basis of Section 2258A and the Fourth Amendment.

30.    Each of the State's claims is premised on the theory that Apple has violated West Virginia law by failing to search for and identify any CSAM content of its users—and that West

Virginia law thus affirmatively requires providers like Apple to monitor and affirmatively search and screen the content of its users. *See* Compl. ¶ 210(f) (noting that Apple failed to implement "available proactive detection measures to detect and report known CSAM on iCloud, iMessage, and/or Apple devices"); ¶ 236 ("This public nuisance can be abated by Apple's implementation of a comprehensive CSAM detection tools across its ecosystem."). These claims—and any injunctive remedy requiring Apple to conduct searches of its users' content—conflict with and are preempted by 18 U.S.C. § 2258A and the Fourth Amendment.

31.     As explained above, Congress carefully designed Section 2258A to require companies like Apple to report any CSAM material they find to NCMEC, through its CyberTipline. 18 U.S.C. § 2258A(a)(1)(B).  But, it is explicit that no searches are required. 18 U.S.C. § 2258A(a), (f). To safeguard this carefully crafted scheme—and to ensure that the aim of reducing online child sexual exploitation is achieved—Congress assigned sole enforcement authority for Section 2258A to the United States Attorney General. *See* 18 U.S.C. § 2258A(d) ("The Attorney General shall enforce this section.").

32.     This structure—voluntary searching and mandatory reporting—is necessary to avoid Fourth Amendment issues, because requiring Providers to conduct searches could implicate individual Fourth Amendment rights and interfere with the ability of law enforcement to investigate and enforce federal and state child pornography, protection and abuse laws.  *See, e.g.*, *United States v. Guard*, 152 F.4th 375, 389–90 (2d Cir. 2025) (holding that an ISP did not act "as  governmental agent when it searched . . . account for child pornography and provided the materials . . . to NCMEC" because the search in question was voluntary, not compelled); *United States v. Rosenschein*, 136 F.4th 1247, 1256 (10th Cir. 2025); *United States v. Sykes*, 65 F.4th

10

867, 877 (6th Cir. 2023); *United States v. Meals*, 21 F.4th 903, 907 (5th Cir. 2021); *United States v. Miller*, No. 16-cv-47, 2017 WL 2705963, at *3 (E.D. Ky. June 23, 2017), aff'd, 982 F.3d 412 (6th Cir. 2020); *United States v. Cameron*, 699 F.3d 621, 637–38 (1st Cir. 2012).

33.    By contrast, a mandatory searching and monitoring requirement, coupled with mandatory reporting, would result in state-compelled searches, meaning that any evidence derived from such searches in a criminal prosecution could be challenged under the Fourth Amendment—the very result courts have repeatedly held Section 2258A avoids.  This is because, "[w]hen a statute or regulation compels a private party to conduct a search, the private party acts as an agent of the government." *United States v. Stevenson*, 727 F.3d 826, 829 (8th Cir. 2013). *See also United States v. Richardson*, 607 F.3d 357, 364 (4th Cir. 2010) ("[W]hen a private individual conducts a search as an instrument or agent of the Government the limits imposed by the Fourth Amendment apply.") (cleaned up); *United States v. Zelaya-Veliz*, 94 F.4th 321, 334 (4th Cir. 2024) (noting it is the "consensus of federal courts that private electronic communications are generally protected by the Fourth Amendment, even when transmitted over third-party platforms.").

34.    A state requirement compelling Apple to affirmatively search, screen or scan for third-party CSAM content would directly conflict with this federal framework and therefore "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," as reflected in Section 2258A. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). *See also Morgan v. Ford Motor Co.*, 224 W. Va. 62, 74 (2009) (same).

35.    Moreover, the State's claims and requested relief would (at a minimum) subject criminal cases built on information obtained from Providers like Apple to Fourth Amendment

challenge.  Such an outcome would jeopardize and imperil federal efforts to reduce online child sexual exploitation.  Those claims are preempted by the letter and purpose of Section 2258A. *See, e.g., Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 886 (2000) (holding that where state law "stands as an obstacle to the accomplishment" of a federal objective, it is preempted).

36.     The State, moreover, cannot constitutionally coerce Apple into monitoring its users' private messages and photos and thus skirt the Fourth Amendment. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (corporations "may and should have protection from unlawful demands made in the name of public investigation").  Apple itself thus faces direct injury from the State's efforts to make it an instrument of unlawful government activity—injury that is entirely separate from the constitutional injury its users would face if the State were to succeed in disrupting the federal scheme reflected in Section 2258A.

37.      Apple has a colorable federal defense against the State's claims.

**B.     The State's Claims Are Barred by Section 230**

38.     Separately and independently—and without prejudice to other defenses—Apple has a colorable federal defense on the basis of Section 230.

39.     As relevant here, Section 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

40.     "To establish immunity under Section 230, a defendant must show that (1) the defendant is a provider or user of an interactive computer service; (2) the plaintiff's claim holds the defendant responsible as the publisher or speaker of any information; and (3) the relevant

information was provided by another information content provider." *M.P. by & through Pinckney v. Meta Platforms Inc.*, 127 F.4th 516, 524 (4th Cir. 2025).

41.     The Complaint's core theory is that "Apple has maintained a product ecosystem that actively manages a user's content in ways that materially facilitate CSAM's persistence, accessibility, and dissemination." Compl. ¶ 5. This theory of liability—on which each of the State's claims is premised—is precisely what Section 230 prohibits, because it goes to the decision "whether to publish, withdraw . . . or alter content," and thus would make Apple liable for failing to exercise a "publisher's traditional editorial functions." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Indeed, multiple courts have already determined that claims like those advanced by the State are plainly barred by Section 230. *See, e.g.*, *Doe 1 v. Twitter, Inc.*, 148 F.4th 635 (9th Cir. 2025) (reviewing district court's dismissal of all claims against Twitter, primarily under the immunity provided by Section 230, for Twitter's allegedly inadequate response to reports of CSAM content—and affirming the dismissal of parts of the product-defect claim because those claims "hinge[d] on Twitter's role as a publisher of third-party content"); *Bogard v. TikTok Inc.*, No. 24-cv-03131, 2025 WL 3637035 (N.D. Cal. Dec. 15, 2025) (dismissing tort claims based on Provider's allegedly inadequate responses to harmful content to minors); *Doe v. Apple Inc.*, No. 24-cv-05107, 2025 WL 1266928 (N.D. Cal. May 1, 2025) (same).

42.     "At this budding stage of litigation, and with no view on the likelihood of success of either defense," Apple plainly meets the federal defense requirement. *See CaremarkPCS*, 140 F.4th at 198.

### III.    The Nexus Requirement is Met

43.    "To satisfy the third element under the federal officer removal statute, often referred to as the nexus or connection requirement, a defendant must show it is being sued for an act or acts that it claims were done under—or related to acts done under—federal authority." *3M*, 130 F.4th at 389.  Courts "credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." *CaremarkPCS Health*, 140 F.4th at 195; *see also id.* at 199 ("[T]he bar is fairly low as a removing defendant need not establish an airtight case on the merits in order to show the required connection.").

44.    By focusing on alleged flaws in Apple's detection and monitoring systems—systems which are designed for and in compliance with Section 2258A—the Complaint goes directly to Apple's conduct under Section 2258A, as well as under the supervisory authority of NCMEC and DOJ.  Indeed, the Complaint itself links Apple's purported failures to adequately monitor CSAM content to NCMEC reporting, alleging that Apple's reporting to NCMEC fell "far short of its peers." Compl. ¶ 2.

45.    In any event, as set out in more detail above, the voluntary nature of any searches conducted by Providers like Apple is what ensures the lawfulness of the federal scheme set out in Section 2258A by safeguarding reports to law enforcement from Fourth Amendment challenge. Any theory that Apple could violate state law by failing to conduct CSAM searches—or that state law requires such searches—threatens the federal scheme reflected in Section 2258A and relates directly to Apple's exercise of delegated federal authority.

46.    Such a disruption of federal objectives presents the factual scenario contemplated by the federal officer removal statute.  "[T]he federal officer removal statute's purpose is to

provide a federal forum when particular litigation implicates a cognizable federal interest." *See 3M*, 130 F.4th at 391. "Where the parties dispute difficult factual questions about that federal interest, a [party] acting at the government's direction should have the opportunity to present their version of the facts to a federal, not a state, court." *Id.*

47.    "[G]iving it the benefit of all reasonable inferences from the facts alleged," Apple satisfies the nexus requirement. *See id.* at 391.

### ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

48.    This Notice of Removal is timely because it is being filed within thirty days of the date of service. The State served the West Virginia Secretary of State this Complaint on March 2, 2025. Summons was delivered on March 9, 2025.

49.    Promptly upon the filing of this Notice of Removal, a true copy of this Notice of Removal will be provided to the State pursuant to 28 U.S.C. § 1446(d). Pursuant to Rule 5(d) of the Federal Rules of Civil Procedure, Apple will file with this Court a Certificate of Service of Notice to Adverse Parties of Removal to Federal Court.

50.    Concurrently with the filing of this Notice of Removal, Apple is filing a Notice of Filing of Notice of Removal with the clerk of the Circuit Court of Mason County, West Virginia, in accordance with 28 U.S.C. § 1446(d).

51.    By filing this Notice of Removal, Apple reserves and does not waive any procedural or substantive defense available to it, including, without limitation, lack of subject-matter jurisdiction of the state court, lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted. *See* 5C FED. PRAC. & PROC. CIV. § 1395 (3d ed.) ("A party who removes an action

from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections. . . . [I]nasmuch as the jurisdiction of a removed action essentially is derivative, any defect in jurisdiction or process present in the state suit may be asserted in the district court following removal.").

## CONCLUSION

WHEREFORE, Apple removes this action from the Circuit Court of Mason County, West Virginia.

Respectfully submitted,

/s/ Steven R. Ruby
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
CAREY DOUGLAS KESSLER & RUBY, PLLC
707 Virginia Street East
901 Chase Tower (25301)
P.O. Box 913
Charleston, West Virginia 25323
(304) 345-1234
sruby@cdkrlaw.com
drpogue@cdkrlaw.com

Counsel for Defendant Apple Inc.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the foregoing will be filed in the Circuit Court of Mason County, West Virginia using that court's electronic filing system, which will send notice and a copy to all counsel of record for Plaintiff.

*/s/ Steven R. Ruby*
Steven R. Ruby (WVSB No. 10752)
