**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

STATE OF WEST VIRGINIA *ex rel.*, John B. McCuskey, Attorney General,

Plaintiff,

- against -

Apple Inc.,

Defendant.

Case No. 3:26-cv-00240
Honorable Robert C. Chambers

**ORAL ARGUMENT REQUESTED**

**DEFENDANT APPLE INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

I. Apple's Role Under a Carefully Calibrated Federal Statute ..... 3

II. The State's Action Targets Apple's Federal Role ..... 5

ARGUMENT ..... 6

I. The Court Has Subject Matter Jurisdiction Under 28 U.S.C. § 1442 ..... 6

A. Apple Acts "Under" Federal Officers ..... 7

1. DOJ and NCMEC Are Federal Agencies ..... 7

2. Apple Acts "Under" DOJ and NCMEC ..... 8

B. Apple Has Strong Federal Defenses ..... 14

1. The State's Claims Are Preempted ..... 14

2. The State's Claims Are Barred by Section 230 ..... 16

C. Section 1442(a)(1)'s Nexus Requirement Is Satisfied ..... 17

II. State Sovereignty Is Not a Basis to Remand ..... 18

III. The State Is Not Entitled to Fees or Costs ..... 20

# TABLE OF AUTHORITIES

## CASES

PAGE(S)


*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
2026 WL 898450 (D.S.C. Apr. 1, 2026) .......... 14

*Baran v. ASRC Fed. Mission Sols.*,
2018 WL 3054677 (D.N.J. June 20, 2018) .......... 12

*Chevron USA Inc. v. Plaquemines Par., Louisiana,*
2026 WL 1040461 (U.S. Apr. 17, 2026) .......... *passim*

*City of Martinsville, Va. v. Express Scripts, Inc.*,
128 F.4th 265 (4th Cir. 2025) .......... 20

*Cobb v. GC Servs., LP*,
2016 WL 7155765 (S.D.W. Va. Dec. 7, 2016) .......... 9, 19

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) .......... 15, 16

*GenBioPro, Inc. v. Raynes*,
144 F.4th 258 (4th Cir. 2025) .......... 16

*Jamison v. Wiley*,
14 F.3d 222 (4th Cir. 1994) .......... 14, 15, 17

*Kircher v. Putnam Funds Tr.*,
547 U.S. 633 (2006) .......... 7

*Kolibash v. Comm. on Legal Ethics of W. Virginia Bar*,
872 F.2d 571 (4th Cir. 1989) .......... 7

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005) .......... 20

*Maryland v. 3M Co.*,
130 F.4th 380 (4th Cir. 2025) .......... 7, 17, 18

*Mayor & City Council of Baltimore v. BP P.L.C.*,
31 F.4th 178 (4th Cir. 2022) .......... 11

*Skinner v. Ry. Lab. Execs.' Ass'n*,
489 U.S. 602 (1989) .......... 13

*Stephenson v. Nassif*,
160 F. Supp. 3d 884 (E.D. Va. 2015) .......... 13

*United States v. Ackerman*,
831 F.3d 1292 (10th Cir. 2016) ........ 8, 12

*United States v. Guard*,
152 F.4th 375 (2d Cir. 2025) ........ 8, 12

*United States v. Jeffery*,
2024 WL 4866686 (4th Cir. Nov. 22, 2024) ........ 8

*United States v. Lowers*,
170 F.4th 134 (4th Cir. 2026) ........ 15, 16

*United States v. Maher*,
120 F.4th 297 (2d Cir. 2024) ........ 16

*United States v. Richardson*,
607 F.3d 357 (4th Cir. 2010) ........ 13, 14, 17

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007) ........ 8, 9, 10, 11

*W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*,
23 F.4th 288 (4th Cir. 2022) ........ 9, 10, 19

*W. Va. State Univ. Bd. of Governors ex rel. W. Va. State Univ. v. Dow Chem. Co.*,
2020 WL 3053542 (S.D.W. Va. June 8, 2020) ........ 20

*W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*,
140 F.4th 188 (4th Cir. 2025) ........ *passim*

*W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
646 F.3d 169 (4th Cir. 2011) ........ 19

*Willingham v. Morgan*,
395 U.S. 402 (1969) ........ 19

STATUTES & RULES

18 U.S.C. § 2258A ........ *passim*

18 U.S.C. § 2258A(b) ........ 11

18 U.S.C. § 2258A(d)(1) ........ 4

18 U.S.C. § 2258A(e) ........ 4, 11

18 U.S.C. § 2258A(f) ........ 4, 14

18 U.S.C. § 2258A(g)(4) ........ 11

18 U.S.C. § 2258A(h) ........ 11

18 U.S.C. § 2258B(a) .......... 4, 12

18 U.S.C. § 2258E(6) .......... 3

28 U.S.C. § 1442 .......... 18

28 U.S.C. § 1442(a)(1) .......... *passim*

28 U.S.C. § 1447(d) .......... 20

34 U.S.C. § 11293(b) .......... 8

34 U.S.C. § 11293(b)(1)(B) .......... 3

34 U.S.C. § 11293(b)(1)(K) .......... 5

34 U.S.C. § 11293(b)(1)(K)(i)(II) .......... 4

Fed. R. Civ. P. 62(a) .......... 20

OTHER AUTHORITIES

170 Cong. Rec. H2684, H26845 (daily ed. Apr. 29, 2024) .......... 5, 12

*Apply to NCMEC's CyberTipline*, https://esp.ncmec.org/registration (last visited Apr. 28, 2026) .......... 12

*Brief for State of W. Virginia et al. as Amici Curiae Supporting Petitioners, Chevron USA Inc. v. Plaquemines Par., La.*, 2025 WL 2662994 (U.S. Sept. 11, 2025) .......... 18

*CyberTipline Reporting API Technical Documentation*, https://report.cybertip.org/ispws/documentation/index.html (last visited Apr. 28, 2026) .......... 12

iCloud Terms & Conditions, Section V(B) *Your Conduct*, www.apple.com/legal/internet-services/icloud ..........

Pub. L. No. 110-401, 122 Stat. 4229 .......... 4

## PRELIMINARY STATEMENT[1]

The State's lawsuit against Apple is precisely the kind of legal action that Congress intended to be heard in federal court when it enacted the federal officer removal statute.

The State does not and cannot dispute that federal law (18 U.S.C. § 2258A) requires electronic services providers ("Providers") such as Apple to assist in federal efforts to combat child sexual abuse materials ("CSAM"). The statute requires Apple to report known CSAM to a federal government entity—the National Center for Missing & Exploited Children ("NCMEC")—which works in collaboration with the U.S. Department of Justice ("DOJ") to prosecute CSAM cases. Apple performs this role pursuant to a carefully calibrated federal statutory framework that imposes the *reporting* requirement while expressly disclaiming any requirement that Apple *search* for CSAM. This is no accident—the absence of a searching requirement ensures that evidence supplied by Providers is not suppressed as the fruit of warrantless government-mandated searches under the Fourth Amendment.

The State's action takes dead aim at the delicate balance struck by Congress and seeks to mandate that Apple affirmatively search for CSAM. The gravamen of the State's suit is that Apple allegedly does too little to detect CSAM and fails to disclose to consumers that its detection efforts purportedly fall short, resulting in too few reports to federal officers of known CSAM. The threat to the federal framework posed by a state-law imposed obligation to search for CSAM is clear: it would convert a voluntary private search into a government-mandated

[1] Unless noted, emphasis has been added to quotations, and internal quotations, brackets, citations and footnotes have been omitted. "Not." refers to Apple's notice of removal, ECF No. 1; "Compl." refers to the State's Complaint, ECF No. 1-1; and "Mem." refers to the State's moving brief, ECF No. 8.

search, casting a cloud over the admissibility of the resulting evidence under the Fourth Amendment. This is why Apple meets each of the statute's three requirements for removal.

First, the State's primary argument is that Apple merely complies with federal law and does not act "under" federal officers because it lacks a direct contractual relationship with the DOJ or NCMEC. The Fourth Circuit has specifically rejected imposing such a standard—holding that acting "under" a federal officer requires only efforts "to assist, or to help carry out, the duties or tasks of the federal superior." Apple has met this bar because its assistance to the government goes beyond mere compliance. Congress created a scheme that by its own description requires that Providers like Apple "report instances of CSAM" to federal officers and "wor[k] with" federal officers thereafter "to share relevant information." Courts have consistently held that private parties operating pursuant to similar reporting requirements act "under" federal officers for removal purposes.

Second, Apple has clear, colorable federal defenses—that the State's claims are preempted by 18 U.S.C. § 2258A and the Fourth Amendment and barred by Section 230 of the Communications Decency Act. The State's arguments in opposition simply challenge the merits of those defenses. The whole point of the federal officer removal statute is to allow federal courts to evaluate the parties' arguments on the merits.

Lastly, the State argues that the requisite nexus between its claims and Apple's actions "under" federal officials is absent because no federal agency "directed" or "forced" Apple to engage in the alleged misconduct. That argument has now been unequivocally foreclosed by the Supreme Court's holding that the nexus requirement under the federal officer removal statute "does not require the defendant to show that his federal duties specifically invited his challenged

conduct." The State's claims—predicated on its misplaced belief that Apple reports too few known CSAM cases to NCMEC—clearly "relate to" Apple's federal assistance.

The State's Complaint is baseless—both legally deficient and factually inaccurate. By (wrongly) targeting Apple's role assisting the federal government, the Complaint should also be adjudicated in this Court.

## BACKGROUND

### I. Apple's Role Under a Carefully Calibrated Federal Statute

Apple is a technology company that designs, manufactures, and markets smartphones, personal computers, tablets, wearables, and accessories, and offers related services including cloud storage (iCloud) and messaging (iMessage). Compl. ¶¶ 21, 29, 53. Apple prohibits its users from using its services to engage in illegal activity,[2] but the State alleges that some criminals—in violation of the law—misuse iCloud and iMessage to share CSAM. *Id.* ¶¶ 78, 194.

As the State acknowledges, the Providing Resources, Officers, and Technology to Eradicate Cyber Threats to Our Children Act of 2008 ("PROTECT Act") requires Apple to report any known apparent violations of the federal CSAM laws to NCMEC through NCMEC's CyberTipline.[3] *See* 18 U.S.C. § 2258A; *see also* Compl. ¶ 183. NCMEC was established by Congress and operates as the official national resource center and information clearinghouse for missing and exploited children. *See* 34 U.S.C. § 11293(b)(1)(B). NCMEC reviews reports provided to its CyberTipline and makes these reports, as well as any accompanying analysis, "available to the appropriate law enforcement agency for its review and potential investigation."

[2] *See, e.g.*, iCloud Terms & Conditions at Section V.B, www.apple.com/legal/internet-services/icloud.

[3] Apple is a "provider" under the statute, defined as an "electronic communication service provider or remote computing service." 18 U.S.C. § 2258E(6).

34 U.S.C. § 11293(b)(1)(K)(i)(II). Congress gave the United States Attorney General exclusive authority to enforce the statute. 18 U.S.C. § 2258A(d)(1).

Congress enacted the PROTECT Act to "increase the ability of law enforcement agencies to investigate and prosecute child predators." Pub. L. No. 110-401, 122 Stat. 4229. To facilitate Providers' role in supplying information to NCMEC under the PROTECT Act's reporting requirement—and, more broadly, to advance DOJ's overall enforcement of federal criminal laws targeting CSAM—Congress has immunized Providers such as Apple from the liability that they otherwise would face for preserving and transmitting images of child pornography. *See* 18 U.S.C. § 2258B(a). In granting this express statutory immunity, Congress recognized the unique role that Providers, like Apple, play in achieving the goals of the Act. *Id.*

Section 2258A seeks to safeguard evidence provided to law enforcement from Fourth Amendment challenge by requiring reports only when Providers obtain actual knowledge of CSAM. Thus, at the same time it imposes a reporting obligation (punishable by significant and escalating penalties), *see id.* § 2258A(e), Section 2258A *disclaims* any affirmative duty on Providers to monitor, search, screen, or scan for reportable content, *see id.* § 2258A(f). Congress specifically provided that nothing in Section 2258A should be construed to require a Provider to monitor any user or any user's communications, nor to "affirmatively search, screen, or scan for facts or circumstances" suggesting the possession or distribution of CSAM. *Id.* While Section 2258A assigns Providers a key role in reporting known apparent CSAM, it is careful not to mandate that any Provider undertake government-mandated searches. Because the evidence in CSAM distribution and possession cases often originates from these Providers, *see* Compl. ¶¶ 188–89, protecting this evidence from Fourth Amendment challenge is essential to the federal framework.

In 2024, Congressmembers highlighted "the ongoing collaboration between law enforcement and technology providers to combat sexual exploitation of children." 170 Cong. Rec. H2684 (daily ed. Apr. 29, 2024). Indeed, most reports to NCMEC come from Providers. 170 Cong. Rec. H2685. Congress has recognized that the DOJ relies on CSAM reports from Providers to prosecute CSAM cases, and "to reduce the existence and distribution of online images and videos of sexually exploited children." 34 U.S.C. § 11293(b)(1)(K). The State itself has acknowledged that West Virginia law enforcement often initiates CSAM investigations with tips from NCMEC. Compl. ¶ 188.

## II. <u>The State's Action Targets Apple's Federal Role</u>

The State filed this action on February 19, 2026, in the Circuit Court of Mason County, West Virginia. The State's Complaint rests on alleged flaws in Apple's CSAM monitoring and detection efforts that the State alleges "enabl[e] distribution of CSAM" and result in too few reports to NCMEC and federal law enforcement. Apple's efforts are designed for and in compliance with Section 2258A.

The State alleges that Apple is liable for design defects; negligent CSAM screening, removal, and reporting; facilitating the public nuisance of CSAM dissemination; and violating the West Virginia Consumer Credit and Protection Act. *Id.*. ¶¶ 5–13. The alleged design defect and breach of duty supporting the State's negligence claim is Apple's purported failure to implement proactive tools to screen, monitor, and report user content for CSAM. *Id.* ¶¶ 210, 220–23. The alleged public nuisance results from Apple's alleged failure to implement "comprehensive CSAM detection tools across its ecosystem, including but not limited to, the deployment of such tools to scan for CSAM in user uploads to iCloud and the inclusion of integrated, easily accessible mechanisms for reporting CSAM in its products." *Id.* ¶ 236. Likewise, the State's statutory claim rests on Apple's alleged "failure to disclose" that its

products "lack industry-standard tools," including certain scanning technologies, "to detect and report CSAM." ¶ 240.

The State's Complaint repeatedly invokes Apple's role as a Provider in reporting CSAM to NCMEC and DOJ under Section 2258A. The State argues that Apple made fewer reports to NCMEC than its peers, *id.* ¶ 2; designed its products to "lack integrated, easily accessible mechanisms for reporting CSAM," *id.* ¶ 204; failed to implement tools to *proactively* detect CSAM on its platforms, *id.* ¶¶ 210(f), 236; failed to implement tools that would trigger automatic CSAM reports, *id.* ¶ 223; and failed to disclose that its products lacked "industry-standard tools" to detect and report CSAM, *id.* ¶ 240. The relief the State seeks—including injunctive relief requiring Apple to "implemen[t] … comprehensive CSAM detection tools across its ecosystem," *id.* ¶ 236—seeks to impose obligations on Apple to search for and detect CSAM and thus takes aim at Apple's crucial role under Section 2258A.

On April 1, 2026, Apple removed this action to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), because Apple acts under federal officers, in accordance with federal law, and pursuant to federal immunity in reporting known apparent instances of CSAM for federal law enforcement.

## ARGUMENT

### I. <u>The Court Has Subject Matter Jurisdiction Under 28 U.S.C. § 1442</u>

Under Section 1442(a)(1), a defendant is entitled to removal if it plausibly alleges that (i) "it acted under a federal officer," (ii) "it has a colorable federal defense," and (iii) "the charged conduct was carried out for or in relation to the asserted official authority." *W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 197 (4th Cir. 2025).

As the Fourth Circuit has emphasized, the "congressional promise" of a federal forum inherent in the federal officer removal statute is "broad and mandates a liberal construction." *Id.*

at 194; *see also, e.g.*, *Maryland v. 3M Co.*, 130 F.4th 380, 388 (4th Cir. 2025) ("[R]ather than narrow, grudging interpretations, the statute must be liberally construed."). Under Section 1442(a)(1), "[g]eneral removal principles are … inverted," and "the ordinary presumption against removal does not apply." *Id.*

Similarly, the "normal rule of pleading is not effective when § 1442(a)(1) applies," because "the federal officer removal statute displaces 'the well-pleaded complaint rule' insofar as it 'allows suits against federal officers to be removed despite the nonfederal cast of the complaint.'" *CaremarkPCS*, 140 F.4th at 195 (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)). Rather, "in assessing the propriety of § 1442(a)(1) removal," courts must "credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Id.*

By focusing on alleged flaws in Apple's detection and monitoring efforts—which are designed for and in compliance with Section 2258A—the State's claims go directly to Apple's conduct under Section 2258A, as well as under the supervisory authority of NCMEC and DOJ. Further, *any* theory that Apple could violate state law by failing to conduct CSAM searches—or that state law requires such searches—threatens the federal scheme reflected in Section 2258A and relates directly to Apple's exercise of delegated federal authority.

### A. Apple Acts "Under" Federal Officers

#### 1. DOJ and NCMEC Are Federal Agencies

The federal officer removal statute extends to, as relevant here, "any person" that acts under "any officer … of any agency" of the United States. 28 U.S.C. § 1442(a)(1). The State does not dispute that DOJ and NCMEC are agencies of the United States. DOJ plainly is an agency of the United States. *See, e.g.*, *Kolibash v. Comm. on Legal Ethics of W. Virginia Bar*, 872 F.2d 571, 574, 577 (4th Cir. 1989). DOJ's status as a federal agency is independently

sufficient to satisfy the "federal officer" portion of Section 1442(a)(1)'s "act[s] under a federal officer" requirement. *See CaremarkPCS*, 140 F.4th at 197.

Although the Fourth Circuit has not yet decided the issue,[4] the two courts of appeals to have addressed NCMEC's status concur that NCMEC is a "governmental entity." *United States v. Guard*, 152 F.4th 375, 387–89 (2d Cir. 2025); *United States v. Ackerman*, 831 F.3d 1292, 1295–300 (10th Cir. 2016) (Gorsuch, J.). "The statutory scheme that governs NCMEC's activities imbues it with 'political power' and 'sovereign authority' such that, when NCMEC performs its statutory functions, it does so as a governmental entity." *Guard*, 152 F.4th at 388 (citing *Ackerman*, 831 F.3d at 1295). Congress has "empowered NCMEC to exercise significant law enforcement responsibility" and has "positioned NCMEC as a linchpin in the law enforcement system for the investigation of crimes against children." *Id.*; *see* 18 U.S.C. § 2258A; 34 U.S.C. § 11293(b). Congress's empowerment of NCMEC is evident from its grant of statutory immunity to NCMEC for the knowing receipt, viewing, and distribution of CSAM. *Guard*, 152 F.4th at 388 (Congress immunized these actions by NCMEC "precisely because of the unique value it provides in the prosecution of child exploitation crimes") (quoting *Ackerman*, 831 F.3d at 1297). The history of NCMEC's creation shows its unique role in the federal fight against CSAM and solidifies its status as a government agency. *Guard*, 152 F.4th at 388–89.

**2. Apple Acts "Under" DOJ and NCMEC**

As the Fourth Circuit has made clear, acting under a federal officer requires only that "a private company must be engaging in an effort to assist, or to help carry out, the duties or tasks of the federal superior." *CaremarkPCS*, 140 F.4th at 197; *see also Watson v. Philip Morris Cos.*,

[4] *See United States v. Jeffery*, 2024 WL 4866686, at *3 n.6 (4th Cir. Nov. 22, 2024) ("assum[ing] without deciding that NCMEC is a government actor").

*Inc.*, 551 U.S. 142, 152 (2007) ("[T]he private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."). Likewise, this Court has recognized that a private actor "assists" the government when it "provides services, in the absence of which, the government would need to produce itself." *Cobb v. GC Servs., LP*, 2016 WL 7155765, at *2 (S.D. W. Va. Dec. 7, 2016) (Chambers, J.) (citing *Watson*, 551 U.S. at 153–54). Thus, there must be "at least be some exertion of subjection, guidance, or control on the part of the federal government." *CaremarkPCS*, 140 F.4th at 197. The "acting under" requirement, "like the rest of the statute, benefit[s] from a broad interpretation." *Id.* This requirement—which the State does not address, much less rebut—is satisfied here.

Rather than engaging with controlling law in the Fourth Circuit, the State asks this Court to apply the wrong standards.

First, according to the State, acting "under" a federal officer requires that a private actor be acting pursuant to a legal or contractual relationship or expressly delegated authority. *See* Mem. at 6–7. However, the Fourth Circuit has made clear that "the absence of a direct contractual relationship with the federal government is ***not*** a bar to removing an action under § 1442(a)(1)." *CaremarkPCS*, 140 F.4th at 198. Moreover, the Supreme Court has explicitly rejected the argument that where the defendant's challenged conduct was not "pursuant to a federal contract, … the suit is not against a defendant 'acting under' an officer." *See Chevron USA Inc. v. Plaquemines Par., Louisiana*, 2026 WL 1040461, at *8 (U.S. Apr. 17, 2026). As a result, the State's reliance on *West Virginia State University Board of Governors v. Dow Chemical Co*., 23 F.4th 288 (4th Cir. 2022), for example, is misplaced. *Dow* followed the Supreme Court's definition of "acting under" as "a *private person* who is under the 'subjection, guidance, or control' of a federal officer which 'must involve an effort to assist, or to help carry

out, the duties or tasks of the federal superior.'" *Id.* at 299 (citing *Watson*, 551 U.S. at 151–52). Although *Dow* noted that cases involving private contractors are the "archetype," it did not require a contractual relationship to satisfy the "acting under" requirement. *Id.* Any suggestion to the contrary is squarely foreclosed by *Plaquemines Parish* and *CaremarkPCS*.[5]

Second, the State argues that Apple did not act under federal officers because it is Apple's purportedly unsanctioned misconduct that is at issue—rather than conduct encouraged by the federal government. Mem. at 10–11. To that end, the State argues that Apple was not "acting under" a federal officer unless a federal agency "forced" or "directed" Apple to, for example, "unfairly or deceptively market its products" and "mislead consumers." *Id.* That is not the law. The Supreme Court rejected the very same argument, holding that the federal officer removal statute "does not require the defendant to show that his federal duties specifically invited his *challenged* conduct." *See Plaquemines Par.*, 2026 WL 1040461 at *7.

Under controlling law, by reporting known apparent CSAM pursuant to the requirements of Section 2258A under an explicit grant of federal immunity, Apple is "engaging in an effort to assist, or to help carry out, the duties or tasks of the federal superior." *CaremarkPCS*, 140 F.4th at 197. Apple does so subject to "at least … some exertion of subjection, guidance, or control on the part of the federal government." *Id.* Nothing more is required.

In its role as a Provider, Apple "is helping or assisting federal officers fulfill a basic governmental task, under the government's control or subjection that the government would otherwise have to perform itself," *Dow*, 23 F.4th at 301–02—namely, collecting evidence used

[5] The State also contends that a private party must act pursuant to statutorily delegated authority. Mem. at 5–6. Its reliance on *Watson* is misplaced. There, the Court cited "formal delegation" only as one example of a relationship sufficient, but not necessary, to show a private actor was acting "under" a federal officer. *Watson*, 551 U.S. at 156.

by the government to carry out its law enforcement function. In its Complaint, the State explicitly recognizes Apple's work assisting DOJ and NCMEC in the "prosecutio[n] and conviction of individuals in West Virginia who possessed CSAM," *see* Compl. ¶¶ 189–190.

Now, seeking to defeat Apple's removal, the State reverses course and mischaracterizes Apple's role as "mere compliance" with federal law. *See* Mem. at 4, 5–10 (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007) and *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 229 (4th Cir. 2022)). As the State's own cases recognize, when a private actor is subject to "detailed regulation, monitoring, or supervision" and helps federal officers to fulfill "basic governmental tasks" that the government would have otherwise "had to perform," that assistance goes well beyond "simple compliance with the law" and is amply sufficient to trigger removal. *BP*, 31 F.4th at 229 (quoting *Watson*, 551 U.S. at 153–54).

This is precisely what Apple does. If Apple and other Providers did not provide NCMEC with tips about known apparent CSAM, DOJ and NCMEC would be required to collect the evidence themselves—which, as government actors subject to the Fourth Amendment, they are not as well situated as Providers to do. The State recognizes as much in noting that "law enforcement personnel … often begin investigating a case involving CSAM with a tip from NCMEC," which relays facts gathered by Providers such as Apple. Compl. ¶ 188. Apple's role acting under NCMEC and DOJ plainly goes well beyond "mere compliance" with the law.

The federal government exerts "at least … some … subjection, guidance, or control" over Providers' sharing of evidence of potential CSAM violations, *CaremarkPCS*, 140 F.4th at 197; *Watson*, 551 U.S. at 151, through detailed requirements and supervision. *See, e.g.*, 18 U.S.C. § 2258A(b) (setting forth contents of report); *id.* § 2258A(e) (setting forth penalties for failure to report); *id.* § 2258A(g)(4) (setting forth permitted disclosures by Providers); *id.* § 2258A(h)

(setting forth preservation requirements). To report CSAM through NCMEC's Cyber Tipline, a Provider must first register with NCMEC, which "determine[s] if [it] qualif[ies] for registration," and submit reports subject to NCMEC's guidance.[6] Congress has described this relationship as an "*ongoing collaboration* between law enforcement and technology providers to combat sexual exploitation of children." 170 Cong. Rec. H2684.

The close nature of the relationship between the federal government and Providers is confirmed by Congress's grant of broad immunity to Providers. *See* 18 U.S.C. § 2258B(a). The State contends, without explanation, that although Providers have statutory immunity, they are no different from other private citizens. Mem. at 9 n.7. Courts have concluded the opposite. *Ackerman* noted that Congress recognized the risks of treating Providers like "any private citizen" and, instead, gave them immunity that private citizens do not enjoy in order to facilitate Providers' important role in reporting known apparent CSAM. 831 F.3d at 1297. Courts have pointed to the fact that Congress has granted similar immunity to NCMEC "precisely because of the unique value it provides in the prosecution of child exploitation crimes." *Guard*, 152 F.4th at 388 (citing *Ackerman*, 831 F.3d at 1297).

As a result, courts have repeatedly found that private parties operating under comparable federal reporting requirements act "under" federal officers. For example, a defense contractor required by law to report adverse information concerning employees with security clearances acts "under" the Defense Department. *Baran v. ASRC Fed. Mission Sols.*, 2018 WL 3054677, at *5–6 (D.N.J. June 20, 2018). With good reason. As is the case here, the "reporting structure is the means through which" the federal government requires private parties to "'assist' it in, or

---

[6] *Apply to NCMEC's CyberTipline*, https://esp.ncmec.org/registration (last visited Apr. 28, 2026); *CyberTipline Reporting API Technical Documentation*, https://report.cybertip.org/ispws/documentation/index.html (last visited Apr. 28, 2026).

help it to 'carry out,' its duty." *Id.* Another court addressing the same reporting requirement concluded that "because compliance … is mandatory, assists with the important federal task of protecting classified information, and invites the risk of state tort litigation that might disable the exercise of federal functions (as this lawsuit aptly illustrates), defendants' [reporting] falls within § 1442(a)(1)'s broad 'acting under' language." *Stephenson v. Nassif*, 160 F. Supp. 3d 884, 889 (E.D. Va. 2015). This reasoning applies with equal force here.

Finally, the State argues that *United States v. Richardson*, 607 F.3d 357, 366 (4th Cir. 2010) shows that Apple is *not* "acting under" a federal officer when *reporting* known CSAM. Mem. at 7–8. However, *Richardson* does not address this issue and instead holds that a Provider is not an "instrument or agent of the government" for purposes of the Fourth Amendment when voluntarily *searching* for CSAM, which is not mandated or directed by the government. *See* 607 F.3d at 364. This distinction is dispositive for two key reasons. First, federal law mandates that Providers *report* known CSAM (supporting a finding of "acting under" under Section 2258A) while disclaiming any duty of Providers to *search* for CSAM (negating a finding of "instrument or agent" under the Fourth Amendment). *See Richardson*, 607 F.3d at 366–67 (the governing statute was "abundantly clear" that it did not require ISPs to monitor subscribers' activity for evidence of CSAM). The State's attempt to impose liability on Apple for its conduct relating to searching for CSAM would convert searches that Congress ensured are voluntary into government-mandated searches that implicate the Fourth Amendment. *See Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 614 (1989) (holding that the Fourth Amendment "control[s]" the legality of searches that a private entity undertook "by compulsion of sovereign authority").

Second, the governing standards are distinct. A non-compelled search by a private entity is subject to Fourth Amendment scrutiny if the entity and the government have "an agency

relationship … guided by common law agency principles." *Richardson*, 607 F.3d at 364. In contrast, "acting under" does not require agency, and "at least … some exertion" of "guidance" is sufficient. *CaremarkPCS*, 140 F.4th at 197. Further, the Fourth Amendment does not govern a non-compelled private search unless, for example, the searcher "intended to assist law enforcement." *Richardson*, 607 F.3d at 364. But Section 1442(a)(1) imposes no intent requirement. *Richardson*, if anything, illustrates how a state law requirement that Providers search for CSAM would destroy the careful balance Congress struck in Section 2258A by triggering Fourth Amendment protection—under which "[b]ut for a few exceptions, warrantless searches and seizures are '*per se* unreasonable.'" *Id.*; *see also id.* at 365 (explaining that the lawfulness of a private entity's government-mandated search "is controlled by the Fourth Amendment").[7] In short, Apple easily meets the Fourth Circuit's liberal "acting under" standard.

### B. Apple Has Strong Federal Defenses

Apple need not at this stage "prove that [it] will actually prevail" on its federal defenses because "one of the most important reasons for removal is to have the validity of the federal defense[s] … tried in a federal court." *Jamison v. Wiley*, 14 F.3d 222, 238 (4th Cir. 1994). Instead, these defenses need only satisfy Section 1442(a)(1)'s "low bar" of plausibility, *CaremarkPCS*, 140 F.4th at 198—and they easily clear this hurdle. The State's "merits contentions masquerading as remand arguments" cannot defeat removal. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2026 WL 898450, at *3 (D.S.C. Apr. 1, 2026).

#### 1. The State's Claims Are Preempted

[7] The State invokes the "good faith" exception to the warrant requirement—which requires "objectively reasonable reliance on a statute that authorizes the search"—but fails to identify *any* statute authorizing the searches it seeks to force Apple to conduct. Mem. at 13. Nor does the State explain how the exception *could* apply given that Section 2258A(f) protects users' privacy by disclaiming any affirmative duty on Providers to search user data.

The removal notice demonstrates that Apple has colorable defenses that the State's claims conflict with, and are therefore preempted by, Section 2258A and the Fourth Amendment. None of the State's arguments establish that this defense fails. Rather, the defense is sufficiently colorable that it should be "tried in a federal court." *Jamison*, 14 F.3d at 238.

First, contrary to the State's argument, Mem. at 14, its claims plainly turn on the theory that Apple violates its duties under West Virginia law by not searching for and identifying the CSAM content of its users. *See supra* at 5–6. In determining whether the State's claims are preempted, the Court should "*assume* compliance with the state-law duty in question." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 882 (2000) (emphasis in original). The State disingenuously suggests that if it succeeds in holding Apple liable for alleged insufficient CSAM searching, and related "design choices and public statements," the careful balance in Section 2258A that yields admissible evidence in CSAM prosecutions could remain intact. Mem. at 13–14. The State ignores the cases cited in the removal notice showing that the opposite is more likely true precisely because the Fourth Amendment governs government-mandated searches. Not. ¶¶ 32–33.

Second, the State argues that the Fourth Amendment is inapplicable to its claims because "[h]ash-matching is not a search" under the Fourth Amendment. Mem. at 13. The case the State cites for this proposition also expressly holds that opening and viewing a hash-matched file does constitute a Fourth Amendment search. *See United States v. Lowers*, 170 F.4th 134, 156 (4th Cir. 2026) ("[T]he Government cannot open and view a hash-matched file without running the risk of exposing private, non-contraband material. This is not a risk the Fourth Amendment allows."). The State's Complaint is clear that the hash-matching program that Apple considered would have involved Apple's "manua[l]" review of *all* images reported to NCMEC, Compl.

¶ 133, and that the State seeks to require Apple to adopt that practice, *see id.* ¶ 140 ("[T]he 30-image threshold [for manual review] was too conservative, even under its own design.").

Third, the State submits that users would have no Fourth Amendment privacy interests in their data if "terms of service … explicitly authorize[d] Apple to search for information in a user's uploaded files." Mem. at 14. But courts have rejected the suggestion that terms of service can be sufficient to extinguish reasonable expectations of privacy in their data. *See Lowers*, 170 F.4th at 147 (citing cases for proposition that "a private party's warning that it may monitor how someone uses its provided services to prevent misuses does not eliminate Fourth Amendment protections"); *United States v. Maher*, 120 F.4th 297, 307–09 (2d Cir. 2024) ("It may well be that such terms, as parts of private contracts, have little effect in Fourth Amendment law because the nature of those constitutional rights is against the government rather than private parties.").

Finally, the State wrongly insists that its claims are not preempted because Section 2258A does not bear the "clear and manifest" intent of Congress to supplant state law. Mem. at 12 (citing *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 271 (4th Cir. 2025)). Here, Apple is invoking conflict preemption, which "turns on the identification of actual conflict, and not on an express statement of pre-emptive intent." *Geier*, 529 U.S. at 884. "To insist on a specific expression of … intent to pre-empt … would be in certain cases to tolerate conflicts that … Congress … is most unlikely to have intended." *Id.* at 885.

**2. The State's Claims Are Barred by Section 230**

The State concedes that Apple's Section 230 defense is "minimally colorable," and disputes only whether it is related to Apple's grounds for removal. Mem. at 15. But Apple's defense under Section 230 "arises out of [its] official duties," *CaremarkPCS*, 140 F.4th at 198, because Section 230, like Section 2258A, makes any particular form of content moderation—including searching for CSAM images or data—voluntary. Indeed, Section 230's purpose is "to

encourage service providers to self-regulate the dissemination of offensive material over their services by protecting [them] from law-suits casting them in the role of a publisher." *Richardson*, 607 F.3d at 367. Because Section 230 insulates Apple from state law claims that would disrupt federal law enforcement objectives, Apple's Section 230 defense should be heard by this Court rather than the state court. *See Jamison*, 14 F.3d at 238.

### C. Section 1442(a)(1)'s Nexus Requirement Is Satisfied

"To satisfy the third element under the federal officer removal statute, often referred to as the nexus or connection requirement, a defendant must show it is being sued for an act or acts that it claims were done under—or related to acts done under—federal authority." *3M*, 130 F.4th at 389. As the Supreme Court has explained:

> The phrase 'relating to' sweeps broadly. It means to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with … One thing can relate to another even if it was not specifically designed to affect it. And, one thing can relate to another even without a strict causal relationship. Accordingly, a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct.

*Plaquemines Par.*, 2026 WL 1040461 at *6.

In assessing whether this requirement is met, courts "credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." *CaremarkPCS*, 140 F.4th at 195. "[T]he bar is fairly low as a removing defendant need not establish an airtight case on the merits in order to show the required connection." *Id.* at 199. This "fairly low" bar is easily hurdled here.

The Complaint and the State's moving brief link Apple's purported failure to adequately monitor CSAM content to NCMEC reporting, alleging that Apple's reporting to NCMEC fell "far short of its peers." Compl. ¶ 2; *see* Mem. at 1 (alleging that Apple made fewer reports to NCMEC than its peers in 2023). There is little question that the State's claims at least "stand in

***some*** relation," "pertain," or have "connection with" Apple's reporting duties to NCMEC and DOJ. *Plaquemines Par.*, 2026 WL 1040461 at *6.

The State's argument that Apple fails to meet the nexus requirement because it is not being "forced, under federal control," to commit the acts in question, Mem. at 18, is squarely foreclosed by *Plaquemines Parish*: "a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct." *Plaquemines Par.*, 2026 WL 1040461 at *6; *see also id.* at 11. This standard is far narrower than the but-for causal relationship that the State implies is needed, *see* Mem. at 16, and "giving [Apple] the benefit of all reasonable inferences from the facts alleged," is more than met here, *3M*, 130 F.4th at 391.

## II. State Sovereignty Is Not a Basis to Remand

The State argues that this case must be remanded because "[f]orcing the Attorney General of West Virginia to prosecute West Virginia's claims in federal court impinges upon the State's sovereignty." Mem. at 18. What the State overlooks is that the purpose of the federal officer removal statute is to require removal of state claims to federal court where, as here, the state court claims interfere with federal operations. *See, e.g.*, *3M*, 130 F.4th at 387 (explaining that Section 1442(a)(1)'s "*purpose* is to give effect to the legislative principle that those acting at the federal government's direction should be able to defend themselves in federal—not state—court, *lest states be able to stymy the federal government's operations*"). Indeed, as the State argued to the Supreme Court in *Plaquemines Parish*, "feeble" application of Section 1442(a)(1) would allow "state courts [to] become a means for individual states to warp national policy."[8]

[8] Brief for State of West Virginia *et al.* as Amici Curiae Supporting Petitioners, *Chevron USA Inc. v. Plaquemines Par., La.*, 2025 WL 2662994, at *6 (Sept. 11, 2025); *see also id.* at *20 (advocating a broad construction of § 1442 to address "a vast and troubling trend: state courts positioning themselves as forums to override national policy").

Apple has satisfied Section 1442(a)(1). This ends the inquiry into the propriety of removal. *See, e.g.*, *CaremarkPCS*, 140 F.4th at 195 ("the right of removal under § 1442(a)(1) is … absolute") (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). In fact, the "impinge[ment]" on the State's sovereignty is the intended effect of Section 1442(a)(1). As the Supreme Court has explained, "[t]o protect the Federal Government from state-court 'interference with its operations,' Congress has given federal courts jurisdiction over some suits against federal officers or those acting under them." *Plaquemines Par.*, 2026 WL 1040461 at *3. As this Court has recognized, because "Congress has decided that federal officers require the protection of a federal forum … [t]his policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Cobb*, 2016 WL 7155765, at *1.

The State has not identified a *single* case holding that a state's "authority 'to enforce its own laws in its own court' strongly favors remand" of a case removed pursuant to the federal officer removal statute. Mem. at 21. In fact, the State cites only one case involving the federal officer removal statute—which the State uses only to *concede* that "the federal officer removal statute can weaken the traditional presumption in favor of remand." Mem. at 19 (citing *Dow*, 23 F.4th at 297). Instead, the State relies on *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011), which is wholly inapposite. *CVS* addresses CAFA, Mem. at 20, which raises few of the federalism concerns raised by a statute enacted to ensure a federal forum for claims implicating federal conduct. Moreover, even the court in *CVS* recognized that federal courts should invoke their "constitutional supremacy" where, as here, "removal serves an overriding federal interest." 646 F.3d at 178.

In fact, recognizing the importance of litigating these issues in federal court, "Congress expressly authorized interlocutory appeals" of orders remanding actions removed under

Section 1442(a)(1) and ensured robust protections for appellate jurisdiction. *City of Martinsville, Va. v. Express Scripts, Inc.*, 128 F.4th 265, 270 (4th Cir. 2025) (citing 28 U.S.C. § 1447(d)). Rule 62(a) preserves this statutory right by automatically staying such a remand order for 30 days. *See W. Va. State Univ. Bd. of Govs. ex rel. W. Va. State Univ. v. Dow Chem. Co.*, 2020 WL 3053542, at *1 (S.D.W. Va. June 8, 2020) (Copenhaver, J.); *see also Express Scripts*, 128 F.4th at 269 (Rule 62(a)'s "automatic stay is self-executing").[9] That framework demonstrates the importance of ensuring a federal forum for claims relating to acts under a federal officer.

### III. <u>The State Is Not Entitled to Fees or Costs</u>

There is no basis to argue, and the State has not demonstrated, that Apple "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The State's demand for fees relies exclusively on cases in which defendants removed actions that on their face failed to meet the statutory threshold for the amount in controversy required, leading courts to find the removal to have been "objectively" unreasonable.

Here, by contrast, Apple filed a well-supported notice of removal demonstrating that Apple is entitled to removal under the federal officer removal statute that must be interpreted liberally, construing doubts in favor of the removing defendant. *Supra* at 6–18. It is the State's request for fees and costs, and not Apple's removal, that is objectively unreasonable.

## CONCLUSION

For the foregoing reasons, and those set forth in Apple's notice of removal, this Court should deny the State's motion in its entirety. Apple respectfully requests that the Court grant oral argument on the State's motion.

---

[9] Thus, though this case should remain in this Court, if the Court nonetheless were to conclude that this case should be remanded, a self-executing stay would prohibit the mailing of any remand order to state court for 30 days.

Respectfully Submitted,

**CAREY DOUGLAS KESSLER & RUBY, PLLC**

By: */s/ Steven R. Ruby*

Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
707 Virginia Street East
901 Chase Tower (25301)
P.O. Box 913
Charleston, West Virginia 25323
(304) 345-1234
sruby@cdkrlaw.com
drpogue@cdkrlaw.com

**DAVIS POLK & WARDWELL LLP**

By: */s/ James P. Rouhandeh*

James P. Rouhandeh (*pro hac vice* application pending)
Frances E. Bivens (*pro hac vice* application pending)
Michael Scheinkman (*pro hac vice* application pending)

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
rouhandeh@davispolk.com
frances.bivens@davispolk.com
michael.scheinkman@davispolk.com

*Counsel for Defendant Apple Inc.*