**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

STATE OF WEST VIRGINIA, *ex reI*,
John B. McCuskey, Attorney General,

        Plaintiff,

v.

                                        CIVIL ACTION NO. 3:26-0240

APPLE, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff West Virginia originally filed this case in state court. *See* ECF 1, Ex. 1, Compl. The State alleges Defendant Apple, Inc.'s products are defective because they "materially facilitate" the "persistence, accessibility, and dissemination" of child sexual-abuse material (CSAM). *Id.* ¶ 5.

Apple removed the case to federal court. *See* ECF 1, Notice of Removal. Apple argues removal is proper under 28 U.S.C. § 1442(a)(1), which authorizes the removal of civil actions against persons "acting under" a federal officer. 28 U.S.C. § 1442(a)(1); *see* Notice of Removal ¶ 2. Apple claims it "acts under" a federal officer by complying with 18 U.S.C. § 2258A, which requires Apple to "report any known apparent violations of the federal CSAM laws to the National Center for Missing and Exploited Children" (NCMEC). Notice of Removal ¶ 6.

Before the Court is Plaintiff's Motion to Remand and for Costs and Fees (ECF 7). The Court **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**. The Court will remand the case to state court because mere compliance with the law does not satisfy § 1442's acting-under requirement. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007).

## BACKGROUND

According to West Virginia, "Apple's flagship digital storage platform, iCloud, plays a pivotal role of enabling user storage of vast troves of data and seamlessly synchronizing the transfer of images across a user's devices." Compl. ¶ 6. The State claims iCloud enables the storage, circulation, and concealment of CSAM, in part by offering "end-to-end encryption" for iCloud data. *See id.* ¶¶ 5–6, 9, 43, 53–54, 68, 76, 78–80, 84, 177. It asserts end-to-end encryption "is a barrier to law enforcement," and prevents "the identification and prosecution of CSAM offenders and abusers." *Id.* ¶ 54.

West Virginia faults Apple for allegedly abandoning plans to deploy a "set of CSAM detection tools . . . ." *Id.* ¶ 10; *see id.* ¶ 157. It also alleges "Apple's proprietary applications . . . lack integrated mechanisms for users to report CSAM to Apple or the appropriate legal authorities." *Id.* ¶ 86.

Plaintiffs' Complaint claims Apple negligently designed its products and is strictly liable for the alleged design flaws. *See id.* at 42; *id.* ¶¶ 227, 229. It also alleges Apple's conduct constitutes a public nuisance. *See id.* ¶ 232.

West Virginia further claims Apple has violated the West Virginia Consumer Credit and Protection Act (WVCCPA) by making certain false statements related to its CSAM-detection efforts and by "fail[ing] to disclose to West Virginia residents . . . that its products facilitate the possession, collection, safeguarding, and/or spread of CSAM and lack industry-standard tools to detect and report CSAM." *Id.* ¶ 240.

After West Virginia sued, Apple removed the case to federal court pursuant to 28 U.S.C. § 1442(a). *See* Notice of Removal ¶ 2. A case may be removed under § 1442 if, among other things, the defendant acts under a federal officer. *See* 28 U.S.C. § 1442(a)(1). Apple claims it acts under

a federal officer by complying with 18 U.S.C. § 2258A. *See* Notice of Removal ¶¶ 6, 22. Section 2258A requires electronic communication service providers to report known violations of federal CSAM laws to the NCMEC. *See* 18 U.S.C. § 2258A(a)(1)(A)(i), (2)(A); *see also id.* § 2258E(6) (defining "provider"). Section 2258A does not require providers to "affirmatively search, screen, or scan for" CSAM. *Id.* § 2258A(f)(3).

## LEGAL STANDARD

Section 1442 authorizes the removal to federal court of any "civil action . . . against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a).

"[T]o remove a case under § 1442(a)(1), a private defendant must show: '(1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for or in relation to the asserted official authority.'" *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 228 (4th Cir. 2022) (*BP II*) (emphasis omitted) (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017)).

Ordinarily, "[b]ecause removal jurisdiction raises significant federalism concerns, [a court] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). But the Fourth Circuit has held that the "federal officer removal statute must be 'liberally construed,'" and that "the ordinary 'presumption against removal' does not apply." *Mayor & City Council of Balt. v. BP P.L.C.*, 952 F.3d 452, 461 (4th Cir. 2020) (*BP I*), *vacated on other grounds*, 593 U.S. 230 (2021) (quoting *Watson*, 551 U.S. at 150).

The State, however, argues "the Eleventh Amendment requires a re-calibration back toward favoring remand," for claims brought by a state's attorney general. ECF 8, Pl.'s Mem. 19

-3-

(emphasis omitted). In support of this argument, West Virginia cites *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc. See id.* at 19. There, the Fourth Circuit held that state-sovereignty concerns justified limiting the scope of removal under the Class Action Fairness Act (CAFA). *See* 646 F.3d 169, 178–79.

The Court is unpersuaded. In *McGraw*, the Fourth Circuit explained federal courts should "reserve[e] [their] constitutional supremacy only for when removal serves an overriding federal interest." *Id.* at 178. In support of this proposition, the court cited *Tennessee v. Davis*, an early Supreme Court case dealing with federal-officer removal. *See id.* (citing 100 U.S. 257, 266–67 (1880)). *Davis* suggests federal-officer removal *is* a situation in which federal courts should wield their constitutional supremacy:

> [T]he execution and enforcement of the laws of the United States, and the judicial determination of questions arising under them, are confided to another sovereign, and to that extent the sovereignty of the State is restricted. The removal of cases arising under those laws, from State into Federal courts, is, therefore, no invasion of State domain. On the contrary, a denial of the right of the general government to remove them, to take charge of and try any case arising under the Constitution or laws of the United States, is a denial of the conceded sovereignty of that government over a subject expressly committed to it.

*Davis*, 100 U.S. at 267; *see also Watson*, 551 U.S. at 149 ("Removal, the [*Davis*] Court found, would help to prevent hostile States from 'paralyzing' the Federal Government and its initiatives." (quoting *Davis*, 100 U.S. at 263)). Also, whereas CAFA aims to balance "federal interests" with "deeply-rooted principles of federalism," *CVS*, 646 F.3d at 178, the federal-removal statute is aimed solely at "protect[ing] federal officers from interference by hostile state courts," *Watson*, 551 U.S. at 148 (quoting *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)). Accordingly, that this case was brought by a state's attorney general does not alter the relevant standard of review.

## ANALYSIS

### I.        Removal to Federal Court Was Improper

West Virginia argues Apple satisfies none of the three requirements for § 1442 removal. Pl.'s Mem. 5, 11, 15. Since the Court concludes Apple fails to satisfy the acting-under requirement, it declines to address the other two requirements. *See W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 307 (4th Cir. 2022).

For § 1442 to apply, "the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis in original). But "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.* at 152 (emphasis in original).

In *Watson v. Philip Morris Companies, Inc.*, a cigarette producer sought federal-officer removal, arguing it acted under federal authority by testing its cigarettes according to FTC specifications. *See id. at* 155. The Supreme Court held that neither complying with these specifications nor the FTC's monitoring of testing "establish[ed] the type of formal delegation that might authorize [removal]." *Id.* at 156. The Court explained "the FTC's detailed rules about advertising, specifications for testing, requirements about reporting results, and the like" were "regulation, not delegation." *Id.* at 157.

This case is similar to *Watson*. Like § 2258A, the requirements at issue in *Watson* imposed affirmative duties on the removing defendant. One of those duties was a reporting obligation. Further, as with Apple, the *Watson* defendant cited only legal compliance as a basis for removal; there was no "evidence of any delegation of legal authority" to the defendant, nor was "there evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement." *Id.* at 156. In fact, § 2258A carefully avoids delegating government

authority by expressly disclaiming ant obligation to "affirmatively search, screen, or scan for" CSAM. 18 U.S.C. § 2258A(f)(3). By managing its digital storage platform in compliance with § 2258A, Apple "[a]dvanc[es] governmental policy while operating [its] own business." *Mohr v. Trustees of Univ. of Pa.*, 93 F.4th 100, 105 (3d Cir. 2024). This "is not the same as executing a delegated governmental duty." *Id.*

Apple argues reporting CSAM to the NCMEC "goes beyond mere compliance" with the law because it "helps [federal] officers to fulfill basic governmental tasks' that the government would have otherwise 'had to perform . . . .'" ECF 15, Def.'s Resp. 2, 11 (brackets added to correct quotation error) (quoting *BP II*, 31 F.4th at 229). According to Apple, "[i]f Apple . . . did not provide NCMEC with tips about known apparent CSAM, [the U.S. Department of Justice (DOJ)] and NCMEC would be required to collect the evidence themselves . . . ." *Id.* at 11.

Apple is mistaken that "fulfilling basic governmental tasks" can turn mere legal compliance into the type of assistance that satisfies § 1442. In *West Virginia State University Board of Governors v. Dow Chemical Company*, the Fourth Circuit explained a court need only analyze whether a "private actor's conduct is helping or assisting federal officers fulfill a basic governmental task" if the court first determines that the "private actor's conduct goes beyond mere compliance with federal laws . . . ." 23 F.4th at 301. In other words, mere legal compliance can never give rise to federal-officer removal, even if the private actor helps with a basic governmental task.

Regardless, the Court does not agree Apple performs tasks that the government would otherwise have to perform. In *Dow*, the Fourth Circuit held that a company was not acting under a federal officer by engaging in environmental cleanup required by a federal permit. *See id.* at 293, 306. The defendants in *Dow* argued § 1442 applied because "the EPA itself would have performed"

the cleanup "if Defendants had not." *Id.* at 303. The court rejected this. It described "Defendants' argument that the federal government would be required to take over the [site] and conduct its own independent cleanup should Defendants fail to" do so as "speculative at best." *Id.* at 306. The court explained that, unlike the private defendants, "the EPA would be required to comply with a detailed and lengthy procedure," with different possible courses of action, to clean up the site. *Id.*

This case is analogous. There is no indication law enforcement would "conduct searches of Apple's user files for CSAM" if Apple failed to comply with § 2258A. ECF 16, at 4. Like the EPA in *Dow*, the federal government would have to jump through extra hoops to search for CSAM in Apple user's data, namely by issuing subpoenas and securing search warrants. *See* Apple, Inc., Legal Process Guidelines: U.S. Law Enforcement § I (2025), https://perma.cc/X67X-MD2G ("[I]nformation about Apple users will not be released without proper legal process."); *United States v. Lowers*, 170 F.4th 134, 139 (4th Cir. 2026) ("Americans enjoy a reasonable expectation of privacy in the digital files they place in cloud based storage accounts. Law enforcement cannot open and view those private files without first securing a warrant."); Def.'s Resp. 11 ("If Apple . . . did not provide NCMEC with tips about known apparent CSAM, DOJ and NCMEC would be required to collect the evidence themselves—which, as government actors subject to the Fourth Amendment, they are not as well situated . . . to do."). Given these additional barriers, it is "speculative at best" that the United States would search user data for CSAM if Apple did not comply with § 2258A. *Dow*, 23 F.4th at 303; *see also Martin v. LCMC Health Holdings, Inc.*, 101 F.4th 410, 415 (5th Cir. 2024) (holding a hospital did not act under the federal government by creating a patient portal in response to federal incentives, reasoning "the federal government would not have created a[] . . . portal if [the defendant] had not chosen to do so"); *see Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 917 (9th Cir. 2024) (similar).

Apple also argues it acts under federal authority because 18 U.S.C. § 2258B gives it immunity from any "civil claim or criminal charge . . . arising from the performance of [its] reporting or preservation responsibilities" under § 2258A. 18 U.S.C. § 2258B(a). But Apple points to no case law suggesting that mere legal compliance becomes sufficient for federal-officer removal when the defendant has some sort of immunity.

Finally, Apple argues two district-court cases—*Stephenson v. Nassif* and *Baran v. ASRC Federal Mission Solutions*—support its position. *See* Def.'s Resp. 12–13. Both *Stephenson* and *Baran* dealt with a federal requirement that "contractors with access to classified information" report "'adverse information coming to their attention concerning any of their cleared employees.'" *Baran*, Civ. No. 17–7425, 2018 WL 3054677, at *5 (D.N.J. June 20, 2018) (quoting National Industrial Security Program Operating Manual § 1-302(a)); *see Stephenson*, 160 F. Supp. 3d 884, 888 (E.D. Va. 2015). In both cases, the district court held that the defendant acted under a federal officer by complying with this requirement. *Stephenson*, 160 F. Supp. 3d at 888; *Baran*, 2018 WL 3054677, at *5–6. *Stephenson* and *Baran* are not analogous to this case. Since the reporting requirement at issue in those cases only applies to federal contractors, it is best understood as a contract term rather than a legal requirement.

Apple does not act under a federal officer by merely complying with § 2258A. Since § 1442 does not apply, Apple's removal was improper.

## II.      The Court Will Not Award Costs and Fees

A court may award costs and attorneys' fees following a removal "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). While the Court sides with the State on removal, it cannot agree Apple's

arguments "are utterly without merit . . . ." Pl.'s Mem. 22. Apple put forth reasonable arguments on a complicated legal issue. That is enough to defeat West Virginia's request for costs and fees.

### CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Remand and for Costs and Fees (ECF 7). The Court **REMANDS** this case to the Circuit Court of Mason County, West Virginia.

Apple has filed a Motion to Defer Mailing of Remand Order (ECF No. 26). The Court **GRANTS** the Motion. The Court **STAYS** the transmission of this Order to state court **until July 17, 2026**, *see W. Va. State Univ. Bd. of Govs. ex rel. W. Va. State Univ. v. Dow Chem. Co.*, Civ. A. No. 2:17-cv-3558, 2020 WL 3053542, at *1 (S.D. W. Va. June 8, 2020).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:     July 7, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE